# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| SELMA BATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:04-cv-03399-JEO |
| | ) | |
| CLARK PULLEY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the court on the motions for summary judgment (doc. 14) and to strike (doc. 19) filed by Clark Pulley, Inc. (hereinafter "Clark" or "the defendant").[1] Based upon a review of the record, including the pleadings, briefs, and evidentiary submissions of the parties, the court finds that the defendant's motion to strike is due to be granted in part and denied in part and the motion for summary judgment is due to be granted.

## PROCEDURAL BACKGROUND

Selma Bates (hereinafter "Bates" or "the plaintiff") filed her complaint on December 9, 2004, alleging that the defendant discriminated against her on the basis of her race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") and 42 U.S.C. § 1981. (Doc. 1). The complaint alleges a right to recovery under disparate impact (Count One) and disparate treatment (Count Two) claims. (*Id.*). The defendant has filed a motion for summary judgment (doc. 14) and an accompanying memorandum ("Def. Mem." (doc. 15)). The plaintiff filed a brief in opposition to the motion. ("Pl. Brief" (doc. 17)). Included with the brief as exhibits are the affidavits of the

---

[1] References herein to "Doc.___" are to the document numbers assigned by the Clerk of the Court.

plaintiff and Vincent Burnell and an "Explanation of Calculations" by Terry Joanne Williams. (*Id*.). Following submission of the plaintiff's brief in opposition to the motion, the defendant filed its reply brief ("Def. Reply" (doc. 17)) and a motion to strike the affidavits of the plaintiff and Vincent Burnell and the "Explanation of Calculations" by Terry Joanne Williams (doc. 19). The plaintiff did not file a reply to the motion to strike.

## FACTS[2]

The plaintiff is an African-American female who was assigned to work at the Clark facility by her employer, Action Staffing, a temporary employment agency, beginning on March 21, 2003. Clark is located in Russellville, Alabama. The defendant manufactures pulleys for lawn and garden products as well as appliances. (Moore Affidavit ("Moore Aff.") at ¶ 1).[3] The defendant's consumer production needs fluctuate throughout the year due to the fact that the lawn and garden products business is particularly impacted by seasonal changes. (Moore Dep. at p. 20). The defendant accommodates for its changing needs by utilizing a temporary staffing agency to provide temporary employees to supplement its regular workforce. (*Id*.). Clark employs approximately 85 full-time employees and uses up to 40 temporary employees when they are necessary. (*Id*. at pp. 28-29). When additional permanent employees are needed, the defendant hires from its temporary workforce to fill the open positions. (Moore Aff. at ¶ 3).

The defendant's Russellville plant is comprised of four manufacturing departments

---

[2]The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff. They are the "'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[3]Terry Moore is the Vice President and General Manager for the defendant. (Moore Deposition ("Moore Dep.") (located at document 15, exhibit B)) at p. 11). Moore's affidavit is located at document 15, exhibit C. His second affidavit ("Second Moore Aff.") is located at document 19, exhibit B.

including the press, split/spun, assembly, and finishing. Each department includes primary machines which must be "set up" for differing production runs and operated in order for that department to function. (Moore Aff. at ¶ 5). The paint line, which is part of the finishing department, is the only area on the manufacturing floor that does not contain a primary machine that must be "set up" or operated. (*Id*.).

On March 21, 2003, the plaintiff was assigned by Action Staffing to work on the paint line at Clark as a temporary employee. (Bates Dep. pp. 26-27, 37, 51).[4] The paint line operated with two loaders and two packers. They were responsible for hanging parts on a rack, taking parts off after they have been coated with paint, and packing them. (*Id*. at pp. 37-38; Moore Aff. at ¶ 7). The plaintiff worked 91% of her time on the paint line during the year she worked at Clark. (Moore Aff. at ¶ 8).

When there was no work available on the paint line, the plaintiff performed other tasks. (Bates Dep. at pp. 46-47). These tasks included (1) one day on the furnace assembling parts without having to "set up" or operate a machine (*id*. at pp. 40, 45); (2) less than one week packing parts in a container and stacking the containers without having to "set up" or operate a machine (*id*. at pp. 41, 45-46); (3) placing parts on two occasions on a "spline machine" (which cuts the part without effort by the worker) and packing them in a box after the part runs through (*id*. at pp. 41-42); (4) placing parts on the "splitter machine" (which cuts the part without effort by the worker) and throwing them in a container (*id*. at p. 43); (5) less than one week placing parts on the "hole" (which cuts the part without effort by the worker) (*id*. at pp. 43-44); and, (6) a few times inspecting parts for quality control (*id*. at p. 54).

---

[4]The plaintiff's deposition is located at document 15, exhibit A.

3

The plaintiff had been working as a temporary employee for approximately eight months when she asked lead-person Carol Pace[5] if she could be hired by Clark on a full-time basis. Pace told her that she was "working on it." (*Id*. at p. 85). Also, in and about the same time period, the plaintiff states that she also asked General Manager Terry Moore if she could be hired as a full-time employee. (*Id*. at p. 63). Moore responded by informing the plaintiff that "the paint line was not the place to be hired full-time."[6] (*Id*. at p. 64).

Approximately three months after the first conversation, the plaintiff states that she again asked Moore if she could be hired full-time, and his response was the same. (Bates Dep. at p. 64). During this conversation, the plaintiff states that she posited the following to Moore: "You only have two blacks in here that's [sic] full-time. What does that look like?" He replied "I don't know. What does it look like?" (Bates Dep. at pp. 64-65). The next day (March 24, 2004), Moore told the plaintiff he could help her get a full-time "regular" job at another local plant that his friend was opening. (Bates Dep. at p. 73). Fifteen to twenty minutes later, the plaintiff walked off the job because she felt like she was not wanted there.[7] (Bates Dep. at pp. 81-82, 74).

During the period that the plaintiff was employed as a temporary employee, she never applied for any specific position at Clark. (Moore Aff. at ¶ 8).

---

[5]The plaintiff reported to Pace. (Bates Dep. at p. 35; Moore Dep. at p. 80).

[6]In her affidavit that was submitted in opposition to the motion for summary judgment, the plaintiff states, "Throughout my employment I had inquired of Terry More, the plant manager and also my immediate supervisor, Carol Pace, as to when and as to why I had not been converted to a permanent employee." (Bates Aff. at p. 1). She also states that "Moore states that [she] could not go full-time while working on the pain[t] line." (*Id*.). She further states that Pace told her, "No one may get full time unless you agree to work overtime or if you work on the paint line you cannot get full time employment." (*Id*.).

[7]In her affidavit, the plaintiff states that she "felt that resignation was the only alternative available" following "Moore's sarcastic response" to her. (Bates Aff. at p. 1).

The defendant's practice was to not hire a temporary employee unless he or she had learned to "set up" and/or operate at least one machine.[8] Moore stated that, typically, it takes between three and twelve weeks for an employee to learn to "set up" or operate a simple manufacturing machine, and longer for more complicated machines. (Moore Aff. at ¶ 6). The defendant generally also assigns manual tasks, such as hanging parts, or packing parts in boxes and containers to employees that cannot "set up" or operate a machine. These tasks are also typically given to seasonal and temporary help. (Moore Aff. at ¶ 6). During her deposition, the plaintiff acknowledged that it is reasonable for the defendant to require its employees to know how to "set up" and operate other machines, and there is a difference between "setting up" and operating a machine. (Bates Dep. at pp. 55, 141). Clark has never hired a temporary employee who worked primarily on the paint line who had not learned to "set up" and/or operate at least one machine. (Moore Aff. at ¶ 9). The plaintiff alleges that shortly after she resigned, seven white temporary employees were converted to permanent employees.[9] (Pl. Brief at p. 2). She also alleges that of the eighty-six permanent employees during 2004, Clark employed eighty-two Caucasian employees, two African-American employees, and two Hispanic employees. (*Id*.).

During the year that the plaintiff worked at Clark, the defendant converted eight temporary employees (seven white employees and one African-American) to regular employees. (Moore Aff. at ¶ 11). Two of those employees were hired by Clark to operate a splitter machine,

---

[8] By way of example, the defendant notes that Joanne Aycock remained a temporary employee for approximately one year before quitting because she worked 80% of her hours on the paint line and had not learned to "set up" or operate a machine. (Moore Aff. at ¶ 9).

[9] Contrary to this court's Uniform Initial Order, this assertion does not contain evidentiary cites in the record for said claim.

two were hired to operate the furnace, two were press operators, one was a forklift driver (African-American), and one operated the broach machine. (*Id*. at ¶ 11).  Angela Hale, Richard Wallace, Juliette Keeler, and Anthony Reedy were temporary employees that were hired on April 12, 2004, as permanent employees. (*Id*. at ¶ 12).  Angela Hale was hired as a permanent employee from temporary employee status.  At one point, she was assigned to the paint line, but she was not working on the paint line at the time of her status change.  She was working in the press department, operating a press.  During her employment as a temporary employee, she worked 40% of the time "setting up" and operating machines in other departments. (*Id*. at ¶ 12). Wallace, Keeler, and Reedy worked as temporary employees in areas other than the paint line and they all could "set up" and operate multiple machines. (*Id*. at ¶ 12).[10]

The plaintiff claims that Clark hired Cassandra Patrick and Greta Maloney, after the two individuals worked as temporary employees assigned to the paint line.  (Bates Dep. at pp. 69-70). Cassandra Patrick, who was hired July 10, 2000, was able to "set up" and operate a machine. Prior to being hired as a permanent employee, she worked 41% of her time "setting up" and operating machines in other departments, including the broach, the furnace, and doing rework. (Moore Aff. at ¶ 13).  Greta Maloney, who was hired by the defendant on December 28, 1998, was able to "set up" and operate a machine.  Maloney's specific hours as a temporary employee were not available because she was hired by the defendant over seven years ago. (*Id*.).  However, both Patrick and Maloney worked on other machines in the plant more hours than the plaintiff. (Bates Dep. at pp. 70-71, 101-02).

---

[10]The plaintiff also notes that she "requested to be trained, however, no one offered [her] additional training, nor did they tell [her] the procedures to go through to receive extra training to be able to set-up other machines." (Bates Aff. at p. 2). Although this claim is not a distinct claim for relief, it will be considered as part of the evidence on the enumerated claims in her complaint.

The plaintiff was a temporary employee for over one year.  At no time did she complain to management about discriminatory actions.  (Bates Dep. at p. 89).

## DISCUSSION

### Motion to Strike

The defendant has moved to strike the affidavits and other materials offered in support of the plaintiff's opposition to the motion for summary judgment.  (Doc. 19).  It asserts that the submissions fail to meet the standard set forth in Rule 56(e).  As previously noted, the plaintiff has not filed anything in response to the motion.

FEDERAL RULE OF CIVIL PROCEDURE 56 states, in pertinent part, that affidavits in support of or in opposition to a motion for summary judgment ". . . shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  FED. R. CIV. P. 56(e).  "If a supporting or opposing affidavit fails to conform to Rule 56(e), the opposing party may move to strike the nonconforming portion [or portions]."  *Ali v. City of Clearwater*, 915 F. Supp. 1231, 1236 (M.D. Fla. 1996), *citing Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.*, 1993 WL 229601, *2 (M.D. Fla. June 23, 1993) and *Barnebey v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1529 (M.D. Fla. 1989).  "In considering a summary judgment motion, a court may only consider evidence that is admissible or that could be presented in an admissible form."  *Denney v. City of Albany*, 247 F.3d 1172, 1190 n.10 (11th Cir. 2001) (citing *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996)); *see McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (otherwise admissible evidence may be submitted in an inadmissible form at the summary judgment stage), *aff'd*, 520 U.S. 781, 117 S. Ct. 1734,

138 L. Ed. 2d 1 (1997).

The first matter is the affidavit of the plaintiff. To the extent the affidavit states facts which the plaintiff had personal knowledge, such as statements made by Pace and Moore, the motion is due to be denied. To the extent it contains conclusory statements that are unsupported by personal knowledge, such as "they did manage to train seven white employees to operate and 'set up' the machines shortly after I resigned," they are due to be struck. The plaintiff's lack of personal knowledge requires that the statements be struck because they do not take into account other factors. By way of example, with regard to the statement regarding the training of seven white people after she left, the affidavit fails to consider the prior work history and training of these individuals and merely make a broad-brush conclusory allegation. Additionally, there is no indication of the basis of the information. Such is insufficient as a matter of law.

The second matter is the affidavit of Vincent Burnell.[11] The defendant asserts that the information contained therein is not based on personal knowledge. (Doc. 19 at p. 3). Burnell was terminated by the defendant while operating a forklift due to concerns that he was a threat to the safety of others. (Burnell Aff.). In his affidavit, he states, among other things, that after he was terminated, he learned that "[e]veryone that [he] worked with said that [he] was doing a good job and that [he] had not done anything on the forklift that others had not done." (*Id*.). This evidence is due to be struck for a number of reasons. First, it is not relevant. *See* FED. R. EVID. 401. Second, such evidence is hearsay. *See* FED. R. EVID. 801. Third, it is conclusory.[12]

---

[11] The second "affidavit" in the submission is from Tanora Mosley. However, it is inadmissible because it is not executed.

[12] Burnell also filed an action in this court concerning his claim of discrimination. That matter, *Burnell v. Clark Pulley, Inc*., 3:04-cv-03407-IPJ, recently was dismissed with prejudice on the motion of the defendant.

The third submission is the "Explanation of Calculations" statement submitted by Terry Joanne Williams and her resume. Therein, Williams explains her calculation of the "statistical" analysis which is included in the plaintiff's brief. (Pl. Brief at pp. 4-5). She states that she "multipied the number of full-time employees by the [race/ethnic group] percentages given by the U.S. Census Bureau for each group." ("Explanation of Calculations"). The defendant asserts that the "Explanation" is not notarized or otherwise sworn like an affidavit. (Doc. 19 at pp. 3-4). The defendant further asserts that the "statement is not based on any personal knowledge of Clark Pulley's employment practices" and it has "no probative value because she [(Williams)] did not perform the requisite statistical analysis; she did not use data from the proper county, nor did she rely on data reflecting the number of employees in the civilian labor force. . . ." (*Id*. at p. 4).

It is evident that the "statement" of Williams does not comport with the requirements of Rule 56. More importantly, however, it is not probative because it fails to properly consider the fact that the employee population is comprised of much more than the residents of the City of Russellville. The evidence reveals that about one-half of the employees reside outside the city limits of Russellville. (Second Moore Aff. at ¶ 3).[13] Additionally, it fails to compare those in the "civilian labor force" with the percentages at the plant. In sum, the statistical analysis is not sufficiently probative to impact the outcome of this motion.

### Summary Judgment Standard

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is

---

[13] This affidavit is located at document 18, exhibit B.

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met her burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## DISPARATE IMPACT

The plaintiff first asserts entitlement to relief on a basis of disparate impact. The law "prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily protected group." *EEOC v. Joe's Stone Crab,* 220 F.3d 1263, 1274 (11th Cir. 2000). The plaintiff is not required to prove discriminatory intent when advancing such a claim. *Cooper v. Southern Co.*, 390 F.3d 695, 723-24 (11th Cir. 2004) (citing *Joe's Stone Crab*, 220 F.3d at 1273). To establish a *prima facie* case of disparate impact discrimination, a plaintiff must demonstrate (1) a specific, facially-neutral employment practice; (2) a significant statistical disparity in the racial composition of employees benefitting from the practice and those *qualified* to benefit from the practice; and, (3) a causal nexus between the practice identified and the statistical disparity. *Lee v. Florida Department of Children & Family Services*, 135 Fed. Appx. 202, 204-05 (11th Cir. 2005) (citing *Joe's Stone Crab,* 220 F.3d at 1274; *Cooper*, 390 F.3d at 716-17). In order to satisfy the third, critical requirement, a plaintiff "must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Cooper*, 390 F.3d at 724 (citations omitted, emphasis in original).

The defendant argues that the plaintiff has failed to show a "specific employment practice" that has had a disproportionate impact on her. (Def. Mem. at p. 12). The plaintiff counters that Clark's requirement of making temporary employees learn to "set up"

and operate a machine before they are hired as a permanent employee adversely impacts African-Americans.

The defendant's practice has been to not hire a temporary employee unless he or she has learned to "set up" and/or operate at least one machine. (Moore Aff. at ¶ 6). The plaintiff has not submitted any evidence to refute this fact. Furthermore, the plaintiff acknowledges that it is reasonable for the defendant to require its employees to know how to "set up" and operate other machines, and that there is a difference between "setting up" and operating a machine. (Bates Dep. at pp. 55, 141).

The plaintiff has failed to produce any valid statistical evidence that shows a legally significant disparity in the racial composition of employees benefitting from the practice and those in the qualified work force. The plaintiff is required to make a statistical comparison of the racial composition of persons in the labor pool that are qualified for the position at issue with those persons actually holding that position and then to show that the hiring requirement is connected to the disparate impact. *Edwards v. Wallace Comm. College*, 49 F.3d 1517, 1520 (11th Cir. 1995) (citing *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989). In evaluating these claims, the United States Supreme Court has also held that "statistics based on an applicant pool containing individuals lacking minimum qualifications for the job would be of little probative value." *Lee*, 135 Fed. Appx. at 205 (citing *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988)).

The plaintiff's statistical analysis is flawed for two reasons. First, the plaintiff relies on an improper data pool and on a general population census rather than the number of employees in the appropriate civilian work force. According to United States Census Bureau statistics

generated in 2000, the city of Russellville, where Clark is located, has an African-American population of 11.2%. (Exhibit 6).[14] However, almost half (39 out of 83 employees) of Clark's employees live in Franklin County and other surrounding counties, not in the city of Russellville. (Exhibit A;[15] Second Moore Aff. at ¶ 3). According to the United States Census Bureau statistics, the African-American population in Franklin County is 4.2%. (Exhibit B).[16] Using the more geographically accurate data pool for the analysis, the court finds that the percentage of African-Americans in Franklin County is not statistically distinct enough from the 2.35% of African-Americans employed as permanent employees at Clark Pulley to support her claim.[17] Second, the data provided by the plaintiff for Russellville is invalid due to the fact that the statistics use general population percentages instead of the number of employees in the civilian labor force.[18] The general population figures are not probative that those individuals were qualified for a permanent job at Clark. The plaintiff's statistics fail to demonstrate a disparate impact on her because of her race.[19] The defendant's motion for summary judgment is due to be granted on this claim.

## DISPARATE TREATMENT

---

[14] The exhibit is located at document 17.

[15] Exhibit A is located at document 18.

[16] Exhibit B is located at document 18.

[17] The percentage is calculated using the approximate number of 85 permanent employees, two of which were African-American, at the time of the plaintiff's temporary employment. [2/85 = 2.3529%].

[18] The court uses this term as it is the one used in the U.S. Bureau of the Census statistics provided by the parties.

[19] For instance, the plaintiff has failed to show the number of black and white temporary workers, any analysis concerning the opportunity for training the temporary workers, any information regarding the turnover at the facility, or any information concerning the number black and white individuals that applied for permanent positions compared to those hired. Such information would have been helpful in determining the motion.

The defendant next argues that the plaintiff has failed to establish a *prima facie* case of discrimination and that she has failed to show pretext with regard to her disparate treatment claim. (Defendant's Mem. at pp. 15-19). "A plaintiff establishes a *prima facie* case of disparate treatment by showing that [s]he was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Hendrix v. Snow*, 2006 WL 288099, *8 (11th Cir. 2006) (citing *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir. 2004)). The plaintiff must prove that she was a victim of intentional discrimination, and she may show such discrimination by presenting direct evidence of the same or by relying on circumstantial evidence using the indirect, burden-shifting method. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). To establish a *prima facie* case of disparate treatment, the plaintiff must show (1) that she is a member of a protected class, (2) that she applied for and was qualified for an available position, (3) that she was rejected, and (4) that the defendant filled the position with a person outside of the protected class. *Walker v. Prudential Property and Casualty Ins. Co*., 286 F.3d 1270, 1274-75 (11th Cir. 2002). After the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir. 1989). "[T]he plaintiff then must establish that the employer's articulated reason was a pretext for discrimination . . . [T]he plaintiff retains the ultimate burden of proving by a preponderance of the evidence the existence of purposeful discrimination." *Crawford v. Chao*, 158 Fed. Appx. 216, 2005 WL 3303998, *2 (11th Cir.

2005).[20]

> . . . . To show that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs*, 106 F.3d at 1538. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman* [*v. AI Transp*.], 229 F.3d [1012,] 1024-25 [(11th Cir. 2000) (en banc)]; *see also Combs* [*v. Plantation Patterns*], 106 F.3d [1519,] 1529 [[(11th Cir. (explaining that the plaintiff must present "sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action").

*Cooper*, 390 F.3d at 725-26.

The plaintiff in this case meets the first element to establish a *prima facie* case for disparate treatment because her race qualifies her as a member of a protected class. However, she fails to fulfill the second element of a *prima facie* case. The defendant's customary practice was to hire permanent employees from the temporary employment pool after they were qualified to "set up" and/or operate at least one machine. (Moore Aff. at ¶ 6). The evidence shows that the plaintiff failed to learn how to adequately "set up" and operate any machines while she was employed as a temporary employee on the paint line. During her temporary employment, she spent 91% of her time on the paint line. The work on the paint line does not require the worker to "set up" and operate a machine. (*Id*. at ¶ 9). To the extent that the plaintiff contends that she was able to "set up" the splitter machine, the evidence shows that her knowledge of the "set up" and operation of the machine was insufficient for her to be deemed qualified. When she was

---

[20]When determining a disparate treatment claim, the substantive proof and analysis is the same for 42 U.S.C. § 2000e or a claim under 42 U.S.C. § 1981. *See Bass v. Board of County Comr's, Orange County, Florida*, 256 F.3d 1095, 1109 n.4 (11th Cir. 2001); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

asked during her deposition to describe what it takes to specifically "set up" the splitter machine, she responded:

> A. I don't know. I just run it. I never got to set it up. The splitter? I run – yes, I did. I set the splitter up. I did set the splitter up. I didn't set the spline up.
>
> Q. So what does it take to set up the splitter?
>
> A. You just have to make sure the parts – you have this little thing – I think that's the splitter. I don't know the name of it – that you have to put on there to make sure the parts fit on, and it comes down. And you have to check the parts to make sure the holes are out correctly.
>
> Q. Is there anything else involved in setting up the machine?
>
> A. No.

(Bates Dep. pp. 92-93). Although the undersigned is not familiar with the operation of a "splitter" in this industry, it cannot be said that the foregoing testimony demonstrates the requisite knowledge of the operation or "set up" of such a machine. The reader certainly cannot "set up" such a machine premised on this description. Simply stated, the plaintiff's description of how to "set up" the splitter, the only machine she contends she is able to "set up," demonstrates that she did not know how to "set up" the machine. She also did not know how to "set up" and/or operate any other machines. She therefore was not qualified and she has failed to demonstrate the second element of her *prima facie* case.

Furthermore, the plaintiff further fails on this claim because she never applied for any specific permanent position at Clark. The plaintiff clearly voiced her interest in and inquired about a permanent position. To the extent she argues that she was submitting herself as an applicant for a permanent position, the court finds these facts to be insufficient under the

circumstances and evidence before the court at this juncture.[21]  (Pl. Brief at p. 10).

## CONSTRUCTIVE DISCHARGE

For a plaintiff to establish a claim for constructive discharge, she must demonstrate that "working conditions were so intolerable that a reasonable person in her position would have been compelled to resign."  *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000).  During the entire period of the plaintiff's employment, she did not complain to any individual in management about harassment or discrimination.  (Bates Dep. at p. 89).  The plaintiff has not demonstrated that she faced intolerable working conditions or any working conditions that were not the same or similar to all the other employees at Clark Pulley.  The plaintiff has not established a claim for constructive discharge as a matter of law.

## CONCLUSION

Based on the foregoing, the court finds that the defendant's motion to strike is due to be granted in part and denied in part and the motion for summary judgment is due to be granted in its entirety and the plaintiff's complaint is due to be dismissed with prejudice.  An appropriate order will be entered contemporaneously herewith.

**DONE**, this the 28th day of April, 2006.

_John E. Ott_
**JOHN E. OTT**
United States Magistrate Judge

---

[21] To the extent that the plaintiff argues that the defendant had "no standard operating procedures as to hiring practices, in that there are no job descriptions or written specifications stating the qualifications or skills that must be mastered in order for one to be promoted or converted to permanent full-time employment," the court does not find that sufficient to overcome the defendant's motion for summary judgment.  (Pl. Brief at p. 9).  The plaintiff's evidence also fails to show that the defendant's hiring practice was pretext.  The evidence does demonstrate that other employees including Angela Hale, Cassandra Patrick and Greta Maloney, who initially were on the paint line were hired after they worked approximately 40% of their time on various machines where replacements were needed.  (Second Moore Aff. at ¶ 13).  Additionally, the plaintiff's sister, Mary Hillman, was hired when a job came open after she had the requisite training and experience.  (*Id*. at ¶ 10).